IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ALLAN LOVETT | § § § | |
| Plaintiff, | § § | C. A. No. _____ |
| v. | § § | |
| HARRIS COUNTY DEPARTMENT OF EDUCATION PUBLIC FACILITY CORPORATION AND DONNA TREVINO JONES | § § § § § § | (Jury Demanded) |
| Defendant | § § | |

**PLAINTIFF'S ORGINIAL COMPLAINT**

**TO THE HONORABLE JUDGE:**

**COMES NOW** Plaintiff, Allan Lovett, filing this Original Complaint complaining of Defendant(s), Harris County Department Of Education Public Facility Corporation and Donna Trevino Jones and in support thereof would show as follows:

**I.**

**JURISDICTION, PARTIES AND VENUE**

1.  This Court has jurisdiction over the causes of action asserted by Plaintiff pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*.; 42 U.S.C. § 2000e5(f), 42 U.S.C. § 2000e(k) (Pregnancy Discrimination Act), 28 U.S.C. §§ 1331 and 1343(a)(4), 29 U.S.C. 2615 (a)(1)(2), and 42 U.S.C. § 1981a(a)(1).

2.  Venue is proper in this district pursuant to 42 U.S.C. § 2000e5(f) and 28 U.S.C. § 1391(b)(1)(2) & (c)(2). Defendant, Harris County Department Of Education Public Facility Corporation operates several school/education locations in the Southern District of Texas. This establishes minimum contacts with the area encompassing the Southern District of Texas and, all or a substantial part of the unlawful acts set for below occurred in this district.

1

3. Plaintiff, Allan Lovett (hereinafter "Plaintiff"), is an individual who resides in Houston, Brazoria County, Texas. Plaintiff is a member of a group protected by Title VII and The Family Medical Leave Act and was at all relevant times an employee within the meaning of the applicable statutes.

4. Harris County Department Of Education Public Facility Corporation (hereinafter "Defendant") regularly conducts business in the State of Texas. Defendant Harris County Department Of Education Public Facility Corporation and Principal Donna Trevino Jones was at all relevant times an employer within the meaning of the Family Medical Leave Act.

5. The causes of action complained of herein wholly arose in the Southern District of Texas, Houston Division.

6. Defendant, Harris County Department Of Education Public Facility Corporation is an employer in accordance with 29 U.S.C. § 2611(4)(A)(i-ii).

7. At the time of the incidents giving rise to this complaint, the plaintiff was an employee in accordance with 29 U.S.C. 2611(2)(A)(i-ii).

## II.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission (hereinafter "EEOC") on or about March 30, 2020. In said Charge No. 460-2020-02009, Plaintiff asserted that he was subjected to discriminatory treatment in violation of Title VII of the Civil Rights Act of 1964, as amended, because of his race (African-American / black), retaliation, hostile work environment, disability-anxiety, gender (male), nationality-African American, and violations of the Family Medical Leave Act.

9. The EEOC issued a Right to Sue Notice authorizing this lawsuit on August 25, 2020. Plaintiff has exhausted his administrative remedies and files this suit within the statutory limitations period. A copy of such "Right to Sue" letter is provided as exhibit 1.

## III.

## FACTUAL BACKGROUND

10. During the first week of school, while at a meeting, Principal Trevino-Jones directed us to move away from each other-other black employees. There were six other occupied tables and none of those tables were asked to move.

11. Everyone that was sitting at the table I was sitting discussed how insulting and discriminating that this situation was. In fact, there was a group of Latino employees sitting in the back of the cafeteria, and during the meeting, the principal went in the back and sat with them and did not once ask them to separate.

12. After that incident, more encounters with Principal Trevino-Jones began. On 8-13-19 our district staff was in a meeting at University of Houston Downtown, and I asked a few questions and made a few comments. Principal Trevino emailed me the next day to show her appreciation for my comments and questions. But it is my understanding that Dr. Mays, (district administrator) did not like my comment regarding the "district sending us crazy kids". On 8-13-2019, Dr. Mays immediately got offended and said his response then called Principal Trevino Jones outside. Despite the previous compliment by Principal, Trevino-Jones, on 8-21-19, I was written up for this incident. My job was threatened in the write up, along with the non-renewal of my contract.

13. In another incident on 8-14-19, once again the district had had a meeting at U of H Downtown. I had to leave early because of a family emergency, and the agenda had been changed without telling employees. I informed Principal Trevino Jones that I had to leave because of a family emergency, and she told me that I did not have her permission to leave. I tried to explain to her that the agenda changed without any notification, and she responded by saying I didn't have her permission to leave, I then told her my emergency was more important than her permission. As I walked off, I heard her say "he's gonna bring the Jones out of me."

14. Now after that threat, he concluded that she was saying I was going to bring the black

out of her because her maiden name is Trevino. Only after she married the black man did her name change to Jones. I felt threatened and the comment had a racist tone. The principal also said that he was gonna bring out the Jones in her in front of other employees another time as well. He was written up for this incident also on 8-21-19. Other employees left early and were not written up.

15. On 8-25-2019, Principal Trevino wrote an email to the whole faculty asking them to "help coach Lovett in the gym" as if he did not know what he was doing. The principal never asked me did I need any help, she just insulted me in the email. Furthermore, on another occasion, Trevino brought a broken backboard in my classroom-the gym and left it there for several days. When I removed the backboard, she asked him what happened to the goal, and he told her he threw it away because it was trash, Trevino got frustrated and asked him if he thought that was a good idea. He informed her that the goal was a safety risk to faculty and staff because it was cracked.

16. On 8- 26-19 He filed a worker's compensation claim against Principal Trevino Jones because of the harassment, bullying and threats. He was sent to the doctor and diagnosed with anxiety disorder.

17. On 8-26-19 He received a harassing email from Trevino. She forwarded him an email from another employee, asking him if he had sent a similar email to our staff. On 8-30- 19, he filed a district level grievance on Trevino-Jones because of the harassment, discrimination, and threats.

18. He stayed out on leave until 11-21-19. After returning to work, the harassment continued, this time it was from assistant principal Jordan.

19. On 1-8-19 Asst. Principal Jordan wrote him up 3 times stemming from 12-19-19. He was informed that he was not at his duty post, when clearly, he was standing next to the other assistant principal the whole time. His job was threatened in this write up along with threats of non-renewal of his contract. Furthermore, on 12-20-19, he was interrogated about his whereabouts on 12-19-19 by Ms. Jordan. He believes all this stemmed and came from principal Trevino.

20. Another write up the Plaintiff received was about attendance in the 1st semester, the write up stated he was tardy five times in the 1st semester, although the rules stated that each employee

is allotted six tardies per semester. Upon information and belief, there were some employees that were tardy every day of the 1st semester and never written up. Ms. Jordan also stated he did not follow her directive of texting her every morning when he got to work. He sent her an email letting her know that he would not be following that directive. As a result, his job was also threatened, along with the threat of non-renewal. Again, he believed all this steemed from Principal Jones.

21. The Plaintiff received another write up about attending professional development. I was written up because he did not attend a meeting called morning pulse that started from 7:35 to 7:45 daily. Again, he got written up for not attending but upon information and belief, other employees did not attend and did not get written up. Once again, his job was threatened in this write up also.

22. On 1-7-2020, I received an email from Trevino Jones letting me know that she changed the master schedule and I would no longer have a planning period from 12:10 to 1:00 p.m. but it would be changed to 7:45 to 8:35 a.m. She also told me that I would be awarded an extra 5 min of prep time each class, times 7 classes. This added 35 min of additional instructional time to his day. She also stated in the email that his planning period would be 50 min and upon information and belief, every other teacher's would be 55 mins.

23. On 1-10-2020, he sent an email to school officials expressing his frustration at what he perceived as discrimination, retaliation, and a hostile work environment due to their conduct.

24. The plaintiff received an email on 1-17-2020, an email from Ms. Jordan at 5:31 am giving him an option for a meeting. At 7:53 a.m. he declined the event. At 8:30 a.m. he saw Ms. Jordan in the office, and she asked him if he was ready for the meeting. He told her he declined the meeting, and she then looked puzzled and said we needed to have it. He told her he did not want to meet today and left. Around 1pm Trevino- and Jordan came into the gym explaining that they wanted to meet with him, and he declined. He told Trevino from all the harassment he was receiving it was making him ill and he would be clocking out shortly. He then sent an email to the district office making them aware of the harassment and he also sent the grievance that he was filing on Ms. Jordan.  About 1:45 p.m. he went to clock out and let Trevino know that he was leaving. She then tried to let me know that he did

not have her permission to leave. He told her he was ill and would be leaving regardless. When he

walked out of the office, he saw the sheriff in the hallway and asked him if Trevino called him to the office for him and he said yes. This, it is alleged was mind boggling to him because he had not done anything for the police to be called. Forty-five minutes later he would receive a call from Trevino letting him know he was being placed on administrative leave.

25. After he hired attorney Derrick D. King, to appear and represent him at the grievance hearings in February 2020, he was subsequently suspended without pay and discharged without proper pay and not being rehired even though he was not taken off of administrative leave (for which he had to file an appeal with the Texas Education Agency to address the matter) before the retention of counsel.

26. The defendant failed to accommodate his pre-existing disability by harassing him and making his anxiety worse.

27. The effect of the practices complained of in the succeeding paragraphs, in accordance with the statutory basis, stated above, has been to deprive the Plaintiff of equal employment opportunities and to otherwise adversely affect his status as an employee because of his race (African-American / black), retaliation, hostile work environment, disability-anxiety, gender (male), nationality-African American, and violations of the Family Medical Leave Act.

## IV. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

*Violation of Title VII - Disparate Treatment*

28. Plaintiff repeats and realleges the allegations contained in the foregoing, paragraphs 1 through 27.

29. Defendant, via its employees engaged in discriminatory behavior towards the plaintiff, based upon his sex by creating a hostile work environment. The plaintiff was subjected to differential treatment by Principal Jones.

30. It is asserted that officials of the Defendant were derelict in their duty to investigate the complaints of the plaintiff. Despite keeping the plaintiff employed and paying the client (after

his appeal to the TEA for some pay) the Defendant still violated the law for which the Plaintiff has suffered harm.

31.     The Defendant's discriminatory practices described above have denied the Plaintiff promotional opportunities if any, compensation, and continued employment to which he was otherwise entitled. The plaintiff was in a no win situation, (1) if he complained about Principal Trevino, he would be verbally assaulted, threatened with termination and harassed some more, or (2) if he risked it and gathered his courage to complain, he would not get any help.

The plaintiff was treated like someone to be avoided. This conduct has resulted in emotional distress and other harm for which entitles the plaintiff to compensation.

32.     The Defendant has undertaken these discriminatory practices willfully or with reckless disregard for the rights of Plaintiff. Such rights are protected under 42 U.S.C. § 1981(a)(a)(1).

33.     These employment practices violated § 703 of Title VII of the Civil Rights Act of 1964, as amended. The actions of the Defendant were conducted through their agents. The respondeat superior principles construed under the herein aforementioned statute(s) are hereby invoked for the liability of the Defendant for its agents who engaged in the prohibited discriminatory behavior.

### SECOND CLAIM FOR RELIEF

*Violation of Title VII - Disparate Impact*

34.     Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs 1 through 33.

35.     Defendant engaged in a prohibited activity when it applied its work-related sick leave policies against the Plaintiff in a discriminatory manner.

36.     The Defendant's discriminatory practices described above have denied the Plaintiff promotional opportunities, compensation, and continued employment to which she was otherwise entitled. This conduct has resulted in emotional distress and other harm for which entitles her to compensation.

37. The Defendants have undertaken these discriminatory practices willfully or with reckless disregard for the rights of Plaintiff. Such rights are protected under 42 U.S.C. § 1981(a)(a)(1).

38. These employment practices violated § 703 of Title VII of the Civil Rights Act of 1964, as amended. The actions of the Defendant were conducted through their agents. The respondeat superior principles construed under the herein aforementioned statute(s) are hereby invoked for the liability of the Defendant for its agents who engaged in the prohibited discriminatory behavior.

### THIRD CLAIM FOR RELIEF

*Violation of Title VII – Retaliation*

39. Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs 1 through 38.

40. Defendants took disciplinary action against Plaintiff because of the Plaintiff making complaints regarding his hostile work environment allegations contained in paragraphs 1-40, incorporated herein by reference. This disciplinary action was in the form of write-ups, verbal warnings, suspension with pay, and threatened disciplinary action.

41. After Plaintiff reported his concerns about the harassment, and the hostile work environment, based upon his protected status (listed above) the Plaintiff was subjected to further retaliation by the Defendant and its agents.

### FOURTH CLAIM FOR RELIEF

*Violation of Family Medical Leave Act and Retaliation*

42. Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs 1 through 41. Defendants are liable in accordance with 29 U.S.C. § 2611(4)(i)-(ii)(l). The Defendants are engaged in the education and ancillary necessary endeavors therein, primarily in the State of Texas, Defendant has at least 500 or more employees. The Defendant engages in interstate commerce in accordance with the provisions established under 29 U.S.C. § 2611(1).

43. The Defendants (principal Trevino Jones and Harris County) meets the definition of employer under the Family Medical Leave Act (FMLA) as it relates to the plaintiff's claims of violation(s) of the FMLA in that an employer under FMLA is any person engaged in commerce or in any industry or activity affecting commerce, who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year. That year will be 2019 as it relates to the plaintiff's claim. The plaintiff claims that this requirement is met. The defendant(s) operated several locations as well as other business sites in the State of Texas and maintained the requisite number of employees for the requisite number of workweeks, during the time that the plaintiff was employed with the defendants.

44. Furthermore, employers covered by FMLA also include any person acting, directly or indirectly, in the interest of a covered employer to any of the employees of the employer. An "employer" includes any person who acts directly or indirectly in the interest of an employer to any of the employer's employees. Thus, plaintiff allege Trevino Jones is considered an employer for the purposes of plaintiff's claims and is liable under the FMLA as pled herein because she was in no doubt his direct supervisor during the applicable period of his employment with defendant Harris County.

45. The plaintiff alleges that he was employed by the employer (defendants ) for at least 12 months, and that he was employed for at least 1,250 hours of service during the 12-month period immediately preceding the commencement of the leave, and that he was employed at a worksite where 50 or more employees are employed by the employer within 75 miles of that worksite.

46. The plaintiff came back from leave only to be interfered with and sent back on leave because of the defendant's harassment and retaliation.

47. Specifically in violation of 29 U.S.C. § 2615 (a)(1) (2), (b)(2) and 29 U.S.C. § 2614 (a)(1)(A)(B) and (2), the Defendant's engaged in conduct that demonstrated their intent to harm the plaintiff as it relates to his work conditions and his need for medical leave even before the plaintiff was notified of his approved eligibility for FMLA

48. Given this atmosphere, it is obvious that the plaintiff's employers discriminated and retaliated against his use of his protected FMLA time and status. This pattern of discrimination and retaliation is even more apparent in that the defendant's engaged in a campaign to position and threaten the plaintiff's job and essentially force the plaintiff to either accept or quit, with the hopes that he would essentially "quit the job himself. The defendants(s) focus and effect of these efforts were to deprive the plaintiff of his protected status under the Family Medical Leave Act.

49. In violation of the FMLA as alleged herein, the Defendant(s) made efforts to effectively rid the company of the plaintiff's presence (employment) by manipulating the job for which he was assigned. Although the accomplishment of this scheme was executed all the more discreetly and timed to take place "shortly" after he returned from his protected leave, it is plainly obvious that the Defendant's planned attack or execution of this attack would result in the plaintiff never being able to return to his previous position.

50. The defendant's plan and execution of their either "take it or leave it" approach as it related to the Plaintiff's job was in violation of the prohibited provisions of the FMLA as asserted herein above.

51. The acts complained about above and herein were done with Defendant(s) tacit approval and were done in contravention of the plaintiff's protected status under the Family Medical Leave Act.

**FIFTH CLAIM FOR RELIEF**

*Violation of American Disability Act*

52. Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs 1 through 51.

53. Defendants took disciplinary action against Plaintiff as a result of the Plaintiff making complaints with regard to her hostile work environment allegations contained in paragraphs 1-45, incorporated herein by reference, these actions, with and without the retaliation standing alone, were in violation of The Americans with Disabilities Act (ADA), 42 U.S.C.S. §§ 12101-12113. The plaintiff alleges that the Defendant is a covered entity and has discriminated against the Plaintiff because of his pre-existing

anxiety. This discrimination was regarding his advancement potential, suspension and subsequent discharge, job training, and other terms, conditions, and privileges of employment. This discrimination was in the form of write-ups, verbal warnings, comments, and insinuations that the Plaintiff could not control the gym where he worked and threatened disciplinary action.

54. After Plaintiff reported his concerns about the harassment, and the hostile work environment, based upon his protected status (listed above) the Plaintiff was subjected to further retaliation by the Defendants.

## V.

## JURY DEMAND

55. Plaintiff requests that this action be heard before a jury.

## VI.

## DAMAGES

56. Defendant's conduct constitutes violations of statutory law. That unlawful conduct seriously affected Plaintiff in his occupation, trade, and business. Because of Defendant's unlawful conduct, Plaintiff has suffered, suffers, and will suffer in the future humiliation, mental anxiety, stress, and other damages. Accordingly, Plaintiff seeks all general, special, incidental, and consequential damages available, all in an amount to be proved at trial.

57. Because of Defendant's unlawful conduct, it has been necessary for Plaintiff to retain the undersigned attorney to represent him. Plaintiff has agreed to pay the attorney reasonable attorney's fees for the preparation and trial of the causes, and further for any appeal thereof should same become necessary.

58. Additionally, Plaintiff has suffered out-of-pocket expenses, which include litigation costs, (including experts) and other expenses to preserve his ability to earn a living. Accordingly, Plaintiff seeks all general, special, incidental, and consequential damages as shall be proven at trial.

59. Further, Plaintiff seeks pre-judgment interest at a rate commensurate with the actual rate of interest in the marketplace or, alternatively, the statutory rate of interest because of the delay in receiving the damages and to avoid unjust enrichment to Defendant. Plaintiff also seeks post-judgment interest at the maximum rate allowed by law if Defendant does not promptly tender damages assessed against them and to avoid unjustly enriching Defendant.

60. Further, Plaintiff seeks all punitive or exemplary damages that are available within the context of this suit, based upon any statutory basis, for the willful and recklessly disregard for the plaintiff's civil rights.

## VII.
## PRAYER

WHEREFORE, premises considered, Plaintiff prays that Defendant be cited to appear and answer herein, and that on final trial, Plaintiff has judgment against Defendants all claims listed herein and against Principal Donna Trevnio-Jones under claim number four together with:

a. Permanent injunction enjoining Defendant, its agents, successors, employees, and those acting in consort with Defendant, from continuing to violate Plaintiff's civil rights.

b. All damages to which Plaintiff may be entitled pursuant to this First Amended Complaint, or any amendment(s) thereto, including but not limited to back pay, reinstatement, front pay, punitive or exemplary damages, statutory relief at law, and equity.

c. Compensatory damages for pain and mental suffering.

d. Reasonable attorney's fees, with conditional awards in the event of appeal;

e. Pre-judgment interest at the highest rate permitted by law;

f. Post-judgment interest from the judgment until paid at the highest rate permitted by law;

g. Costs of court; and

h. Such other and further relief, at law or in equity, to which Plaintiff may be entitled, whether by this Original Complaint or by any amendment hereto.

Respectfully submitted,

Law Office of Derrick D. King
P.O. Box 5526
Katy, Texas 77491
713-334-9500 Office
713-481-0814 Fax

By: _____
Derrick D. King
State Bar No. 24036911
Federal Bar No. 35274
Attorney for Plaintiff
Allan Lovett